UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 19, 2016

OKSANA BAIUL et al.,      :
     :
         Plaintiffs,      :
     :
     -v-      :      15-cv-9920 (KBF)
     :
NBC SPORTS, a division of NBC Universal Media :      <u>OPINION & ORDER</u>
LLC, a Delaware limited liability company, et al.,      :
     :
         Defendants.      :
     :

------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

This action is the latest of several lawsuits in this Court brought by Oksana Baiul ("Baiul") and her company, Oksana, Ltd., against a variety of entities seeking millions in damages for events that took place decades ago.  In recent years, Baiul has initiated a lengthy series of frivolous actions in which she has effectively sought to sue everyone from her past based on essentially the same stale claims.  Among Baiul's myriad lawsuits, she previously filed a lawsuit against more than 20 individuals and entities arising from substantially similar allegations to those here; this Court found that suit to be frivolous and wholly without merit, and granted defendants' motion to dismiss on statute of limitations grounds.  See Baiul v. William Morris Agency, LLC, No. 13 Civ. 8683(KBF), 2014 WL 1804526 (S.D.N.Y. May 6, 2014), aff'd 601 F. App'x 58 (2d Cir. 2015) (summary order).  Baiul also previously brought two related actions against NBCUniversal Media LLC ("NBCUniversal") (among others) arising out of alleged commercial uses of Baiul's

name and likeness relating to the same skating shows at issue here; this Court granted defendants' motion for summary judgment on those claims and awarded attorneys' fees to defendants.  See Baiul v. NBCUniversal Media, LLC, Nos. 13 Civ. 2205(KBF), 13 Civ. 2208(KBF), 2014 WL 1651943 (S.D.N.Y. Apr. 24, 2014), aff'd 607 F. App'x 99 (2d Cir. 2015) (summary order).  In all of these actions, Baiul has been represented by the same attorney against whom the Court ultimately imposes sanctions in this case—Raymond J. Markovich.

As the Court previously stated in its February 16, 2016 decision denying plaintiffs' motion to remand this action to the New York State Supreme Court (ECF No. 27), this particular lawsuit is actually before this Court for the second time, and plaintiffs are currently on their Fourth Amended Complaint ("FAC").[1]  Having twice presided over this action, as well as over Baiul's several prior actions against defendant NBCUniversal and various other entities and individuals, the Court is intimately familiar with the parties and the allegations underlying Baiul's claims. The instant action has the same smell and feel as Baiul's actions previously dismissed by this Court and is just as frivolous.

Pending before the Court are plaintiffs' motion to dismiss this action without prejudice pursuant to Rule 41(a)(2) (ECF No. 28), and defendant NBCUniversal's motion for judgment on the pleadings pursuant to Rule 12(c) and for sanctions pursuant to 28 U.S.C. § 1927 (ECF No. 31).  Informed by its careful review of the operative pleadings and acute awareness of the history of the dispute between these

---

[1] This Court previously remanded this action, which at the time was listed under a separate caption and governed by an earlier complaint, to state court for lack of subject matter jurisdiction.  See Baiul v. NBCUniversal Media, LLC, 15-cv-2816 (KBF) (S.D.N.Y.).

parties, the Court finds this suit—as was the case with Baiul's several prior suits in this Court—to be frivolous and wholly without merit.  It is not in the interests of justice to allow plaintiffs an opportunity to escape final adjudication of this action by allowing them to withdraw their claims without prejudice for the sole purpose of an opportunity to continue to harass NBCUniversal.  Instead, NBCUniversal is entitled to dismissal of plaintiffs' futile claims <u>with prejudice</u> on multiple grounds. Finally, although plaintiffs' counsel now seeks to withdraw from this action in the hopes of avoiding sanctions, given counsel's vexatious conduct that has vastly and unnecessarily multiplied these proceedings throughout this litigation, the Court concludes that sanctions are warranted.

For the reasons set forth below, plaintiffs' motion to dismiss this action without prejudice is DENIED.  NBCUniversal's motion for judgment on the pleadings and for sanctions against plaintiffs' counsel is GRANTED.  This action is hereby dismissed with prejudice.

I.     BACKGROUND[2]

On December 23, 2013, plaintiffs commenced this action in the New York State Supreme Court, New York County, naming as defendants NBCUniversal and Sonar Entertainment ("Sonar").   (ECF No. 5-2.)  The original complaint alleged that NBCUniversal failed to pay Baiul a fixed compensation and continuing

---

[2] The factual allegations in this section are taken from the FAC and the exhibits attached thereto. (Talbert Decl., Ex. 13 ("FAC"), ECF No. 5-14; FAC, Ex. A.)  The Court here recounts only those facts relevant to resolving the pending motions.  For additional background on plaintiffs' prior suits that have been before this Court, the Court also refers to its decisions in those actions.  <u>William Morris</u>, 2014 WL 1804526; <u>NBCUniversal Media</u>, 2014 WL 1651943.  For a more detailed history of this particular suit, the Court also refers to its prior grant of plaintiffs' motion to remand this action under the then-operative third amended complaint, <u>Baiul v. NBCUniversal Media, LLC</u>, 15-cv-2816(KBF) (S.D.N.Y.), ECF No. 104.

royalties for the production of three audiovisual works, comprised of two figure skating performances in "Nutcracker On Ice" shows and a work titled "A Promise Kept: The Oksana Baiul Story" starring Baiul; it alleged that Baiul was entitled to compensation pursuant to 1994 agreements between NBC Sports (a division of NBCUniversal) and On Ice, Inc. ("OII"), a third-party production company, and asserted claims for breach of contract (based on written agreements), unjust enrichment and quantum meruit as to each audiovisual work.  (ECF No. 5-2.)

Between December 23, 2013 and January 9, 2014, plaintiffs filed approximately eight additional documents styled as amended complaints, all containing essentially the same allegations.  (ECF Nos. 5-3, 5-4, 5-5, 5-6, 5-7, 5-8, 5-9, 5-10.)  NBCUniversal moved to dismiss plaintiffs' amended complaint based on, inter alia, the statute of limitations and the failure to plead the material terms of any written agreement; the New York Supreme Court denied that motion in a ruling from the bench on May 7, 2014.  (Feb. 16, 2016 Markovich Affirmation, Ex. A, ECF No. 30-1.)  At oral argument on NBCUniversal's, Mr. Markovich argued that the performance agreement with Baiul called for royalties to be paid in perpetuity, and Justice Ramos denied the motion on the basis that he could not dismiss the complaint prior to discovery in the absence of having a copy of the alleged written performance agreement upon which plaintiffs' claims were based.  (Id.)  Justice Ramos further stated that "I have serious doubts that this case is going to get very far, but it's going to get past the pleading stage" and "I don't want to drag this case out . . . NBC seems to have a very substantial defense here."  (Id. at 15-16.)

Following the New York State Supreme Court's denial of NBCUniversal's motion, the parties engaged in extensive fact discovery (March 4, 2016 Talbert Decl. ¶¶ 3-8, ECF No. 35), and NBCUniversal answered the amended complaint following on October 16, 2014 (ECF No. 5-16).  Plaintiffs subsequently filed a second amended complaint that modified the claims against Sonar (ECF No. 5-11), leading Sonar to remove the action to this Court on April 13, 2015 on the basis of federal question jurisdiction (see Notice of Removal, ¶ 5, ECF No. 5).  On June 17, 2015, plaintiffs filed their third amended complaint in this Court, which, for the first time, added defendants Barry Mendelson and several entities.  (ECF No. 5-13.)  As with plaintiffs' prior complaints, the third amended complaint continued to allege that Baiul had a written agreement with NBCUniversal in relation to her 1994 performance in the Nutcracker On Ice show that NBCUniversal had fraudulently concealed from her; it also alleged several new claims.  (ECF No. 5-13.)  Plaintiffs subsequently moved to remand the action to state court; the Court granted the motion on September 16, 2015 based on the particular circumstances of Sonar's removal (which the Court explained in its remand decision), although the Court expressed its belief that Baiul's claims were meritless.  (ECF No. 5-21.)

Prior to the Court's grant of plaintiffs' motion to remand, plaintiffs had also moved to, inter alia, dismiss the action without prejudice and NBCUniversal had cross-moved to, inter alia, dismiss it with prejudice, each pursuant to Rule 41.  Each party also moved for attorney's fees and the imposition of sanctions against the

5

other.  This Court denied all of these motions as moot in light of its grant of plaintiffs' motion to remand.[3]

While the above motions remained pending in this Court, Baiul filed a new action against NBCUniversal in the Superior Court of the State of California arising from essentially the same events as this action but asserting a theory—entirely inconsistent with the position that plaintiffs had, up through the third amended complaint, been asserting in this Court—that NBCUniversal was liable for failing to enter into a written agreement with Baiul concerning her performance in the Nutcracker On Ice show.  (March 4, 2016 Talbert Decl., Ex. 4, ECF No. 35-4; Notice of Removal ¶¶ 12-13.)  NBCUniversal removed the California action to the United States District Court for the Central District of California and moved to dismiss Baiul's claims on the ground that they were preempted by the Copyright Act.  (Id. ¶ 14.)  The Central District of California granted NBCUniversal's motion to dismiss on February 2, 2016, but allowed Baiul leave to amend.  (March 4, 2016 Talbert Decl., Ex. 5, ECF No. 35-5.)  Baiul filed a second amended complaint in her California action on February 16, 2016.  (March 4, 2016 Talbert Decl., Ex. 6, ECF No. 35-6.)  The California action remains pending.

Subsequent to this Court's remand, on December 9, 2015, plaintiffs filed the operative Fourth Amended Complaint in New York State Supreme Court, naming as defendants NBC Sports (a division of NBCUniversal), previously dismissed

---

[3] Prior to the Court's remand, plaintiffs had also filed notices of voluntary dismissal pursuant to Rule 41(a)(1)(A)(i) as to all defendants except for NBCUniversal as of right, as NBCUniversal was the only defendant that had answered a complaint in this action.

defendant Barry Mendelson, OII, and John Does 1-10.  (FAC, ECF No. 5-14.)[4]  The FAC alleges three state law claims for unjust enrichment, conversion and restitution, and an accounting on the basis that defendants used and exploited the television motion picture recording of the "Nutcracker On Ice Starring Oksana Baiul" without entering into a written contract with Baiul or compensating her. (FAC ¶¶ 1-2, 14-21.)  The FAC alleges that Baiul performed in the Nutcracker On Ice show on or about December 19, 1994, and that defendants recorded the performance pursuant to an agreement executed on January 18, 1995 between OII and NBC Sports (the "Nutcracker Agreement") (FAC ¶ 2), a copy of which plaintiffs attached as an exhibit to the FAC (FAC, Ex. A).  By its terms, the Nutcracker Agreement states that it was effective as of December 31, 1994 and expired on December 31, 2004, with all rights to the recording reverting to OII after that date. (FAC, Ex. A.)  The Nutcracker Agreement also gave NBCUniversal a six month sell-off period to advertise, sell, distribute and otherwise market all remaining copies of the Nutcracker On Ice recording.  (FAC, Ex. A.)  The source of Baiul's assertion that she is owed royalty payments is a clause in the Nutcracker Agreement stating that NBCUniversal is responsible for production expenses, including payment of royalties to Baiul and the other performers pursuant to separate performance agreements.  (FAC, Ex. A.)

The FAC further alleges, on information and belief, that the defendants "used and exploited the Picture throughout the world and <u>inter alia</u> entered into one or

---

[4] NBCUniversal, on behalf of "NBC Sports," is the only defendant named in the FAC that has appeared in this action.  There is no indication that any other defendant has been served as of the date of this decision.

more license agreements with respect to the television broadcast and video distribution of the Picture, including without limitation (a) an agreement dated May 12, 1995 between NBC Sports and D+F Consulting, Ltd. ("D+F"); (b) an agreement dated July 19, 1994 between OII and D+F; and (c) an agreement dated March 28, 1995 between OII and D+F." (FAC ¶ 2.) It further alleges that, "[b]y reason of fraud or mistake, no . . . written 'performance agreement' was entered into between [Baiul] and either OII or NBC Sports, no 'royalties' have ever been paid to [Baiul] by NBC Sports with respect to the . . . Performance, and [Baiul] made no grant of rights to either OII or NBC Sports to use and exploit [Baiul's] Performance in the Picture." (FAC ¶ 3.) The FAC also asserts that defendants' "unjust enrichment and conversion were not reasonably discoverable by Plaintiffs and were not discovered by Plaintiffs prior to receipt of the Nutcracker Agreement and [NBCUniversal's] judicial admissions on May 7, 2014 that no 'performance agreement' was entered into between [Baiul] and either OII or NBC Sports." (FAC ¶ 5.) The allegations in the FAC bear substantial similarity to—and assert the same three claims as—those contained in Baiul's initial complaint in her California action. (See March 4, 2016 Talbert Decl., Ex. 4.)

On December 21, 2015, NBCUniversal again removed this action to this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331, asserting that plaintiffs' current claims are completely preempted by the Copyright Act. (Notice of Removal ¶ 22.) NBCUniversal answered the FAC on December 21, 2015. (ECF No. 6.) Plaintiffs again moved to remand the action to state court on January

20, 2016.  (ECF No. 15.)  The Court denied plaintiffs' motion on February 16, 2016, finding that there was a strong basis to conclude that plaintiffs' claims are completely preempted by the Copyright Act, and thus NBCUniversal had met its burden of showing that the Court properly has subject matter jurisdiction.  (ECF No. 27.)

Immediately following the Court's denial of plaintiffs' remand motion, plaintiffs moved to dismiss this action without prejudice pursuant to Rule 41(a)(2).  (ECF No. 28.)[5]  NBCUniversal opposed that motion, which became fully briefed on March 11, 2016.  (ECF No. 43.)  NBCUniversal, for its part, moved for judgment on the pleadings pursuant to Rule 12(c) on February 26, 2016 on the grounds that plaintiffs' claims are preempted by the Copyright Act and are barred by the statutes of limitations and frauds.  (ECF No. 31.)  NBCUniversal's motion also sought sanctions against Baiul's counsel, Raymond J. Markovich, pursuant to 28 U.S.C. § 1927.  On March 7, 2016, the Court issued an Order stating that it was seriously considering NBCUniversal's request for sanctions but that sanctions could be avoided if plaintiffs voluntarily dismissed the action with prejudice not later than March 11, 2016.  (ECF No. 37.)  Plaintiffs did not dismiss the action with prejudice,

---

[5] Plaintiffs had previously attempted to file a notice of voluntary dismissal of this action (after NBCUniversal had erroneously initially removed it to this Court under the incorrect caption associated with Sonar's earlier removal) without prejudice pursuant to Rule 41(a)(1)(A)(i).  (15-cv-2816 (KBF), ECF No. 108.)  That notice of dismissal was improper and the Court would not have allowed it had the filing not otherwise been rejected.  Because NBCUniversal had previously answered an earlier complaint in this action, plaintiffs lost their right to unilaterally dismiss the case under Rule 41(a)(1).  Tedeschi v. Barney, 95 F.R.D. 182, 183 (S.D.N.Y. 1982).  For this reason, the Court rejected plaintiffs' second attempt to file a notice of voluntary dismissal without prejudice on December 28, 2016.  (ECF No. 11.)

instead opposing NBCUniversal's Rule 12(c) motion on March 11, 2016.  (ECF No. 40.)[6]  The motion became fully briefed on March 16, 2016.  (ECF No. 46.)

## II.    BAIUL'S RULE 41 MOTION TO DISMISS WITHOUT PREJUDICE

### A.    Legal Standards

Where a defendant has answered the complaint or filed a motion for summary judgment, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  "Voluntary dismissal without prejudice is . . . not a matter of right."  Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990).  A grant of dismissal without prejudice is improper "if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit" or if the various factors set forth in Zagano, which the Court sets forth below, weigh against the grant of the motion.  Kwan v. Schlein, 634 F.3d 224, 230 (2d Cir. 2011) (quotation marks omitted).

The Zagano factors, which the Court must consider in determining whether it is appropriate to grant a plaintiff's motion to dismiss without prejudice, include: (1) "the plaintiff's diligence in bringing the motion," (2) "any 'undue vexatiousness' on plaintiff's part," (3) "the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial," (4) "the duplicative expense of relitigation," and (5) "the adequacy of plaintiff's explanation for the need

---

[6] On March 9, 2016, plaintiffs' counsel requested an adjournment of the deadline for plaintiffs to file an opposition brief in relation to NBCUniversal's Rule 12(c) motion and a reply brief in relation to plaintiffs' Rule 41 motion because he intended to move to withdraw from the case.  (ECF No. 38.)  The Court denied the motion on March 10, 2016, informing plaintiffs' counsel that he could not move to withdraw until after the pending motions became fully briefed.  (ECF No. 39.)  Plaintiffs' counsel subsequently moved to withdraw from the action on March 24, 2016.  (ECF No. 48.)

to dismiss." Zagano, 900 F.2d at 14; see also Ogden Power Development-Cayman, Inc. v. PMR Ltd. Co., No. 14-cv-8169 (PKC), 2015 WL 2414581, at *2 (S.D.N.Y. May 21, 2015) (stating that these factors are not necessarily exhaustive and no single one of them is dispositive). "Some, if not most, of these factors are influenced by the probable merit of the claims that a plaintiff is seeking to withdraw, because where a defendant has cast substantial doubt on the validity of a plaintiff's claims or where such claims are dubious on their face, the prospect of relitigation offers little value but threatens much cost." Hoolan v. Stewart Manor Country Club, LLC, 887 F. Supp. 2d 485, 496 (E.D.N.Y. 2012) (alterations omitted).

B.    Discussion

Plaintiffs seek to dismiss their Fourth Amended Complaint without prejudice pursuant to Rule 41(a)(2), arguing that NBCUniversal will suffer no clear legal prejudice or loss of a substantial right by reason of a dismissal of this action without prejudice. Plaintiffs' proffered reasons for seeking dismissal include, inter alia, that (1) Baiul is prosecuting an action based on the same set of operative facts as those contained in the Fourth Amended Complaint in her California action, a case that she filed in June 2015, approximately 18 months after plaintiffs initially brought this case in New York State Supreme Court, (2) personal jurisdiction in California exists over defendants OII and Mendelson, and (3) California law should apply to the dispute. (Mem. of Law in Support of Pls.' Mot. to Dismiss without Prejudice at 3-5, ECF No. 29.) Given the vexatious conduct of Baiul and/or her counsel, the frivolous nature of the claims asserted, the fact that this case has already been ongoing for well over two years, and plaintiffs' manner of proceeding in this case

11

and the previous lawsuits that have been before this Court, the Court vigorously disagrees with plaintiffs' characterization of how this suit has progressed and the merits of their motion.  Upon consideration of the five <u>Zagano</u> factors, which the Court addresses below, the Court easily concludes that NBCUniversal would be seriously prejudiced by the grant of plaintiffs' motion and that plaintiffs have otherwise failed to show their entitlement to dismissal without prejudice pursuant to Rule 41(a)(2).

First, plaintiffs were not diligent in bringing this motion, as they did not move for dismissal until more than two years had passed since they first filed this action in the New York State Supreme Court.[7]  Moreover, plaintiffs had already filed five complaints before bringing the instant motion, including multiple complaints asserting legal theories that plaintiffs concede they knew were no longer tenable.  While plaintiffs previously sought to dismiss this action without prejudice after it was first removed to this Court by Sonar (a motion that was rendered moot by the Court's grant of plaintiffs' first motion to remand), they did not seek voluntary dismissal in the first instance until June 2015, even though Baiul's complaint in her California suit alleged that she was put on notice in May 2014 that the alleged written agreement underlying the contract claims in her several prior

---

[7] Plaintiffs' argument, made in their reply brief, that the Fourth Amended Complaint constitutes an entirely new action that is only a few months old (<u>see</u> Pls.' Reply Mem. at 1, 5-7, ECF No. 43), is without any basis in law or fact.  The Second Circuit's decision in <u>Sheldon v. Amperex Elec. Corp.</u>, 449 F.2d 146 (2d Cir. 1971), which held that a plaintiff could properly file a notice of voluntary dismissal under Rule 41(a)(1) against a defendant that had been severed from a larger lawsuit, is plainly inapposite.  The Court is left to conclude that plaintiffs' counsel is being intentionally disingenuous or that he misunderstands the status of the proceedings.  Plaintiffs' Rule 41 motion is properly considered within the context of the <u>entire</u> case, dating from December 2013, not from the date on which plaintiffs filed their most recent complaint.

complaints in this action never existed.  (See March 4, 2016 Talbert Decl., Ex. 4.)
Plaintiffs' delay in seeking dismissal has significantly wasted the time and
resources of this Court, the New York State Supreme Court, and NBCUniversal.
See Pizzulli v. Nw. Mut. Life Ins. Co.. No. 05-cv-1889 (LAP), 2006 WL 490097, at *2
(S.D.N.Y. Feb. 28, 2006) (denying Rule 41(a) motion even though case was "still
early in the discovery phase" because plaintiff was "not diligent in making the
present motion in the context of the litigation history").  Plaintiffs' delay and refusal
to accept dismissal of this action with prejudice—especially in light of
NBCUniversal's proposal to stipulate that it would not move to dismiss the
California suit, alleging essentially the same claims, on res judicata grounds (March
4, 2016 Talbert Decl. ¶ 16)—is entirely unjustified.

Second, plaintiffs' conduct in this lawsuit has been unduly vexatious based on
their frequent shifting of legal positions and filing of numerous frivolous motions in
this Court, which have required NBCUniversal to expend an inordinate amount of
time and expense to respond.  Among myriad other examples, plaintiffs' vexatious
conduct is clearly exemplified by their pursuit of a breach of written contract claim
for more than a year after plaintiffs admit they learned that Baiul had not entered
into the alleged written agreement underlying that claim.  (March 4, 2016 Talbert
Decl. ¶ 19.)  Second, as another recent example of plaintiffs' vexatious pursuit of
this litigation, after this Court's remand of this action to the New York State
Supreme Court, plaintiffs refused to dismiss this action and instead proceed
exclusively in California (which NBCUniversal offered plaintiffs the option to do

(March 4, 2016 Talbert Decl. ¶ 16)), instead choosing to again amend their complaint in New York with allegations that assert essentially identical claims to those made in the California action.

Third, although plaintiffs argue that this case has not moved beyond the preliminary stage, NBCUniversal has already had to incur significant expense for more than two years in responding to plaintiffs' five complaints, substantial discovery requests, and numerous filings in this action and in defending against Baiul's meritless prior lawsuit against it in this Court. As detailed below, plaintiffs' counsel's conduct has so severely and unnecessarily multiplied these proceedings that the Court imposes sanctions against him pursuant to 28 U.S.C. § 1927. Beyond the expenses it has incurred, it is clear that NBCUniversal would be prejudiced by the prospect of having to face another lawsuit arising from the same allegations that plaintiffs have already reformulated numerous times, and because, as explained below, NBCUniversal has filed a substantive motion to dispose of the case with prejudice that the Court concludes is meritorious on several grounds. This case bears little resemblance to the circumstances addressed in <u>Kwan</u>, where the Second Circuit found that dismissal without prejudice was warranted "where no possibility of relitigation at the instance solely of the plaintiff exists" and a qualified dismissal without prejudice would not result in any plain legal prejudice to the defendant. <u>Kwan</u>, 634 F.3d at 231.

Fourth, allowing plaintiffs to dismiss this action without prejudice, thereby giving them another opportunity to refile these claims in this or another forum,

would multiply the already duplicative expenses that NBCUniversal has had to incur in defending this action.  There would clearly be substantial duplicative expense in forcing NBCUniversal to relitigate these claims over again, especially as it has already had to expend significant resources in defending entirely meritless claims in Baiul's prior action in this Court.  Exposing NBCUniversal to such costs is unjustifiable when, as explained below, it is entitled to dismissal with prejudice on the merits based on several grounds asserted in its motion for judgment on the pleadings.

Fifth, plaintiffs have failed to provide any compelling reason why they should be allowed to relitigate these claims in California, or elsewhere.  Plaintiffs commenced this action in December 2013, approximately a year and a half before Baiul filed her action in state court in California.  To the extent that plaintiffs now claim that this action arises under California law (a dubious assertion) or that certain defendants are subject to personal jurisdiction only in California, she has failed to explain why she brought this action in New York in the first instance, why she waited so long to seek dismissal without prejudice, or why plaintiffs added these other defendants in the FAC but have not attempted to effect service on them in this action.  Plaintiffs' grounds are, furthermore, clearly disingenuous. NBCUniversal offered to allow plaintiffs to discontinue this action and litigate their claims exclusively in California, but plaintiffs refused to accede to NBCUniversal's offer.  (March 4, 2016 Talbert Decl. ¶¶ 14-18.)  The Court has little doubt that if it were to grant plaintiffs' motion, and Baiul's California suit is dismissed on the

merits, plaintiffs would refile this action in New York State Supreme Court based on the same meritless claims.  Because none of the Zagano factors weigh in favor of allowing plaintiffs to dismiss this action without prejudice, plaintiffs' Rule 41(a)(2) motion is denied.

As part of its opposition to plaintiffs' Rule 41 motion, NBCUniversal also asks this Court to impose a filing injunction on plaintiffs to estop them from bringing claims against it.  (Def.'s Mem. of Law in Opp. to Pls.' Mot. to Dismiss without Prejudice at 20-24, ECF No. 34.)  "The issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings."  Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000) (quotation marks and alterations omitted); see also Malcolm v. Bd. of Educ. of Honeoye Falls-Lima Cent. Sch. Dist., 506 F. App'x 65, 69 (2d Cir. 2012) ("[A] court may prevent a litigant from filing pleadings, motions or appeals upon a showing of extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation or a failure to comply with sanctions imposed for such conduct.") (summary order).  A district court may not, however, "impose a filing injunction on a litigant sua sponte without providing the litigant with notice and an opportunity to be heard."  Lau, 229 F.3d at 123.  While the Court agrees that this action is frivolous and that plaintiffs have pursued this litigation in a vexatious manner, the Court does not believe that the requested injunctive relief is warranted at this time.  NBCUniversal's request is therefore denied.  That being said, should Baiul file any additional lawsuits against NBCUniversal that are

meritless, frivolous, vexatious or repetitive with this action, the Court grants NBCUniversal leave to renew its application.

III.    NBCUNIVERSAL'S RULE 12(c) MOTION

A.    <u>Legal Standard for Motion for Judgment on the Pleadings</u>

Rule 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same standard applicable to Rule 12(b)(6) motions applies to motions brought under Rule 12(c). <u>Bank of New York v. First Millennium, Inc.</u>, 607 F.3d 905, 922 (2d Cir. 2010). Thus, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor, <u>id.</u>, and a complaint may be dismissed where it fails to plead "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." <u>Id.</u> (quotation marks and alterations omitted).

Under Rule 12(c), the movant bears the burden of establishing "that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." <u>Juster Assocs. v. City of Rutland, Vt.</u>, 901 F.2d 266, 269 (2d Cir. 1990) (quotation marks and alteration omitted). Where necessary, the Court may supplement the allegations in the complaint with facts from documents attached to the complaint, referenced in the complaint, or relied upon in framing the complaint.

See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss . . . a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

B.    Discussion

NBCUniversal argues that it is entitled to judgment on the pleadings as to the Fourth Amended Complaint on several grounds, including that plaintiffs' claims are completely preempted by the Copyright Act and are nevertheless time-barred, and that each claim is subject to dismissal for one or more reasons particular to that claim.  As explained below, the Court finds that plaintiffs' claims are subject to dismissal on several independent and alternative grounds.

1.    Copyright Preemption

The Copyright Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright . . . are governed exclusively by" the Copyright Act.  17 U.S.C. § 301.  Any state law claim preempted by the Copyright Act must be dismissed.  E.g., Integrative Nutrition, Inc. v. Acad. of Healing Nutrition, 476 F. Supp. 2d 291, 299 (S.D.N.Y. 2007).

A state law claim is preempted by the Copyright Act: "(i) if it seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106—the general scope requirement; and (ii) if the work in question is of the type of works

protected by the Copyright Act under 17 U.S.C. §§ 102 and 103—the subject matter requirement." Barclays Capital Inc. v. Theflyonthewall.com, Inc., 650 F.3d 876, 892 (2d Cir. 2011) (quotation marks omitted); accord Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004); Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848 (2d Cir. 1997). The types of works protected by the Copyright Act include, inter alia, pantomimes, choreographic works, motion pictures and other audiovisual works. 17 U.S.C. § 102. "A work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense." Briarpatch, 373 F.3d at 305. The bundle of exclusive rights protected by the Copyright Act includes, inter alia, the rights of reproduction, performance, preparation of derivative works, and distribution of copies. 17 U.S.C. § 106. Finally, for preemption to apply, the defendant must also satisfy the "extra element" test, which hold that a state law claim is not preempted if "an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action." Barclays Capital, 650 F.3d at 893 (citing Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992)) (quotation marks omitted). The Second Circuit takes "a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." Briarpatch, 373 F.3d at 306. A requirement relating to the

defendant's awareness or intent is not considered an extra element for purposes of this test.  Id.

As discussed above, the FAC alleges three state law claims for unjust enrichment, conversion/restitution, and accounting on the basis that NBCUniversal (and the other defendants) used and exploited a television motion picture recording entitled "Nutcracker On Ice Starring Oksana Baiul" without entering into a written contract with Baiul or compensating Baiul for her participation.  (FAC ¶¶ 1-2, 14-21.)  In the Court's February 3, 2016 decision denying plaintiffs' motion to remand, the Court previously stated that although it could not yet rule on the merits of NBCUniversal's preemption argument, there was a strong basis to conclude that plaintiffs' claims are completely preempted by the Copyright Act.  (ECF No. 27.)  Now, with the benefit of full briefing on this issue, for the reasons stated below, the Court concludes that plaintiffs' claims are entirely preempted by the Copyright Act and thus subject to dismissal.[8]

As the Court explained in its decision denying plaintiffs' motion to remand, the subject matter requirement is clearly met here because there is no dispute that the motion picture recording of Baiul's performance—the alleged recording, distribution and exploitation of which underlies this suit—is a work entitled to protection under the copyright law.  E.g., Nat'l Basketball Ass'n, 105 F.3d at 847

---

[8] At the outset, the Court rejects plaintiffs' argument that NBCUniversal's motion should be denied because NBCUniversal does not assert that the FAC fails to a state a claim under the Copyright Act. This argument lacks logic and is without any precedential support—plaintiffs do not point to a single instance in which a court denied a motion to dismiss on this ground.  To the extent that plaintiffs now claim that they do seek to bring a copyright infringement claim, the FAC itself alleges that defendant Mendelson—and not Baiul—owns the copyright for the Nutcracker recording.  (FAC ¶ 8.)

("The Copyright Act was amended in 1976 specifically to insure that simultaneously-recorded transmissions of live performances and sporting events would meet the Act's requirement that the original work of authorship be 'fixed in any tangible medium of expression.'" (quoting 17 U.S.C. § 102(a)).[9]  Plaintiffs' allegations that NBCUniversal and others distributed her performance and that Baiul is entitled to royalties as a result belies any argument that such performance was not fixed in a tangible medium of expression.

As to the general scope requirement, the Court concludes that a review of the FAC shows that plaintiffs' claims seek to vindicate legal or equitable rights that are equivalent to exclusive rights already protected by copyright law and that no qualifying extra element is required to prove any of plaintiffs' asserted causes of action beyond the elements necessary to prove a copyright violation.  The crux of events giving rise to plaintiffs' claims is that defendants "used and exploited" the motion picture recording of Baiul's performance by producing and distributing numerous copies and versions of it.  (FAC ¶ 2.)  Reproduction and distribution are clearly rights that are encompassed within the bundle of rights afforded to copyright owners.  17 U.S.C. § 106.  As to the extra element requirement, none of plaintiffs' claims contain an extra element beyond that which is necessary to prove a copyright infringement claim.

---

[9] In its decision on plaintiffs' motion to remand, the Court also observed that there is at least a substantial question whether Baiul's underlying performance, akin to a choreographed dance, is protected by copyright once fixed in a tangible medium of expression.  See Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc., 380 F.3d 624, 632 (2d Cir. 2004); Horgan v. Macmillan, Inc., 789 F.2d 157, 160-62 (2d Cir. 1986).

Under New York law, an unjust enrichment claim requires proof that the defendant was enriched at plaintiff's expense and equity and good conscience militate against permitting the defendant to retain what the plaintiff is seeking to recover.  Briarpatch, 373 F.3d at 306.  The Court is persuaded by the reasoning of numerous other courts that such a claim does not contain an "extra element" beyond those necessary to assert a copyright infringement claim.  E.g., id. ("While enrichment is not required for copyright infringement, we do not believe that it goes far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim."); I.C. ex rel. Solovsky v. Delta Galil USA, No. 1:14-cv-7289-GHW, 2015 WL 5724812, at *17 (S.D.N.Y. Sept. 29, 2015); Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312, 321-22 (S.D.N.Y. 2010); see also Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 432 (2d Cir. 2012).  A plaintiff's allegation that she did not receive royalties does not transform a copyright infringement claim into an unjust enrichment claim falling outside the purview of copyright.  Spinelli v. Nat'l Football League, 96 F. Supp. 3d 81, 137 (S.D.N.Y. 2015).  Plaintiffs' unjust enrichment claim is therefore preempted.

Under New York law, a claim for conversion requires a "denial or violation of the plaintiff's dominion, rights, or possession" and it implies "a wrongful act, a misdelivery, a wrongful disposition, or withholding of property."  In re Chateaugay Corp., 10 F.3d 944, 957 (2d Cir. 1993); see also Berman v. Sugo LLC, 580 F. Supp. 2d 191, 206 (S.D.N.Y. 2008) ("To establish a claim of conversion, a plaintiff must show legal ownership or an immediate superior right of possession to a specific

identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question . . . to the exclusion of the plaintiff[']s rights." (quotation marks omitted)).  The Second Circuit has held that a conversion claim is coextensive with and preempted by the Copyright Act where based on the unauthorized publication of a work, <u>Miller v. Holtzbrinck Publishers, L.L.C.</u>, 377 F. App'x 72, 73 (2d Cir. 2010) (summary order) (citing <u>Harper & Row Publishers, Inc. v. Nation Enters.</u>, 723 F.2d 195, 201 (2d Cir. 1983), <u>rev'd on other grounds</u>, 471 U.S. 359 (1985)), and courts within this district have previously concluded that conversion claims are preempted when the defendants are said to be exploiting and infringing rights that are those of a copyright holder, <u>Archie Comic Publications, Inc. v. DeCarlo</u>, 141 F. Supp. 2d 428, 432 (S.D.N.Y. 2001).  In contrast, courts have found that a claim for conversion based on the defendant's possession of a specific tangible object (rather than based on copying, displaying, or distributing the item) is not preempted by the Copyright Act.  <u>E.g.</u>, <u>Buttner v. RD Palmer Enters., Inc.</u>, No. 5:13-CV-0342 (LEK/ATB), 2013 WL 6196560, at *2 (N.D.N.Y. Nov. 27, 2013); <u>see also</u> <u>Harper & Row</u>, 723 F.2d at 201.  A review of plaintiffs' allegations shows that her conversion claim is based on NBCUniversal's withholding of alleged royalty payments, not based on NBCUniversal's alleged wrongful possession or exclusive control over some tangible item rightfully belonging to plaintiffs.  Plaintiffs' conversion claim is therefore preempted.

   To establish a claim for accounting under New York law, a party must establish "(1) relations of a mutual and confidential nature; (2) money or property

entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." <u>Dayan Enters., Corp. v. Nautica Apparel, Inc.</u>, No. 03 Civ. 5706(LLS), 2003 WL 22832706, at *1 (S.D.N.Y. Nov. 26, 2003).  For the same reasons that plaintiffs' unjust enrichment and conversion claims are preempted, plaintiffs' claim for accounting is also preempted by the Copyright Act.  Regardless of how plaintiffs style this claim, the basic allegation underlying it is that Baiul has been deprived of royalties to which she is entitled based on NBCUniversal's use and exploitation of motion picture recordings of her performance.  The Court is persuaded by the reasoning of numerous courts that claims for accounting based on the defendant's alleged misappropriation and exploitation of a copyrighted work are preempted by the Copyright Act.  <u>E.g.</u>, <u>Carell v. Shubert Org., Inc.</u>, 104 F. Supp. 2d 236, 249 n.9 (S.D.N.Y. 2000); <u>Weber v. Geffen Records, Inc.</u>, 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999); <u>Arden v. Columbia Pictures Indus., Inc.</u>, 908 F. Supp. 1248, 1264 (S.D.N.Y. 1995).  Plaintiffs' accounting claim is therefore preempted.

### 2.   Statute of Limitations

Under New York law, a six-year statute of limitations applies to claims for unjust enrichment and accounting.  N.Y. C.P.L.R. § 213(1); <u>Golden Pac. Bancorp v. F.D.I.C.</u>, 273 F.3d 509, 518 (2d Cir. 2001); <u>Sirico v. F.G.G. Prods., Inc.</u>, 71 A.D.3d 429, 434 (1st Dep't 2010) (unjust enrichment).  "A cause of action for unjust enrichment accrues 'upon the occurrence of the wrongful act giving rise to a duty of restitution.'"  <u>Elliott v. Qwest Commc'ns Corp.</u>, 25 A.D.3d 897, 898 (3d Dep't 2006) (quoting <u>Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.</u>, 192 A.D.2d

501, 503 (2d Dep't 1993)).  A claim for accounting accrues when the duty to pay arises.  Glynwill Investments, N.V. v. Prudential Sec., Inc., No. 92 Civ. 9267 (CSH), 1995 WL 362500, at *3 (S.D.N.Y. June 16, 1995) (citing Bernstein v. La Rue, 120 A.D.2d 476, 477 (2d Dep't 1986)).  Under New York law, a claim for conversion is governed by a three-year statute of limitations.  N.Y. C.P.L.R. 214(3); Seneca Ins. Co. v. Wilcock, No. 01 Civ. 7620 (WHP), 2002 WL 1067828, at *6 (S.D.N.Y. May 28, 2002).  A claim for conversion accrues "'at the moment of conversion regardless of when the conversion is discovered.'"  Seneca Ins., 2002 WL 1067828, at *6 (quoting Lennon v. Seaman, 63 F. Supp. 2d 428, 439-41 (S.D.N.Y. 1999)).

Applying the limitations periods governing plaintiffs' three claims, it is clear that plaintiffs commenced this action far too late and that all of these claims are time-barred.  The FAC alleges that Baiul gave her performance in the Nutcracker On Ice show on or about December 19, 1994 (FAC ¶ 2), approximately 19 years before she filed this suit and 21 years before she filed the FAC.  The FAC further alleges that the defendants recorded and exploited Baiul's performance pursuant to the Nutcracker Agreement, dated January 18, 1995.  (FAC ¶ 2; see FAC, Ex. A.)  By its terms, the Nutcracker Agreement states that it was effective as of December 31, 1994 and expired on December 31, 2004, with all rights related to the recording reverting to OII after that date.  (FAC, Ex. A.)  The Nutcracker Agreement also gave NBCUniversal a six month sell-off period after the agreement's expiration period to advertise, sell, distribute and otherwise market all remaining copies of the recording.  (FAC, Ex. A.)  The FAC alleges that it was in the Nutcracker Agreement

that NBCUniversal allegedly took responsibility for paying "royalties" to Baiul pursuant to a separate performance agreement that the parties now agree never came into existence.  (FAC ¶ 3; see FAC, Ex. A.)[10]

Based on the terms of the Nutcracker Agreement, which the Court may consider on this motion because it was attached as an exhibit to the FAC, the occurrence of the wrongful act giving rise to a duty of restitution, the date on which NBCUniversal's alleged duty to pay arose, and the moment of conversion, all took place as early as January 18, 1995, but in no event any later than June 30, 2005, the conclusion of the sell-off period.  This was the last date on which NBCUniversal had any rights to the Nutcracker recording before all such rights reverted to OII. NBCUniversal could not have earned any benefit from Baiul's performance or the Nutcracker recording (or be obligated to pay Baiul any royalties as a result), after this date.  To the extent that plaintiffs argue that the limitations period has not yet run because NBCUniversal has committed a recurring or continuing wrong that persists to this day, that argument is facially implausible based on the terms of the Nutcracker Agreement attached as an exhibit to the FAC.  The argument is conclusory, speculative, and without any concrete factual support.  Because claims for unjust enrichment and accounting have a six-year limitations period, and a claim for conversion has a three-year limitations period, plaintiffs' claims expired— at the latest—on June 30, 2011, more than two years before they filed this suit and

---

[10] The FAC also alleges that the defendants entered into license agreements with respect to the television broadcast and video distribution of the Nutcracker On Ice recording, including agreements dated May 12, 1995, July 19, 1994 and March 28, 1995.  (FAC ¶ 2).  The FAC fails to explain how any of these agreements could serve as a basis for plaintiffs' instant claims.

more than four years before plaintiffs first brought these particular claims in the FAC.[11]

To the extent that plaintiffs argue that the limitations period for their claims must be tolled because Baiul's entitlement to royalties was not reasonably discoverable until NBCUniversal provided plaintiffs with the Nutcracker Agreement and admitted, on May 7, 2014, that no performance agreement was entered into between Baiul and either OII or NBC Sports (FAC ¶ 5), the Court rejects this argument for the same reasons that it rejected Baiul's similar argument in her suit against William Morris Agency, her former talent agency. See William Morris, 2014 WL 1804526, at *7-8.

As this Court explained in William Morris, "'under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action;'" the Court also explained that the plaintiff's due diligence in bringing an action is an essential element of invoking the doctrine. Id. at *7 (quoting Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007)) (alterations omitted). The FAC alleges that Baiul performed in the Nutcracker On Ice show in December 1994—approximately 21 years before plaintiffs filed the FAC—and that Baiul was never paid any royalties thereafter.

---

[11] Of course, there is a strong argument that plaintiffs' claims accrued on January 18, 1995, the date that NBC Sports and OII entered into the Nutcracker Agreement because NBCUniversal's alleged duty to pay would have been triggered at that point. If plaintiffs' claims did accrue at that time, the claims would have expired more than a decade before plaintiffs initiated this action. However, the Court need not determine whether this earlier date applies because plaintiffs' claims are time-barred even based on the latest possible date of accrual.

Based on the facts conceded in the FAC, it is clear that a person of ordinary intelligence would have been aware of a need to further investigate the alleged pattern of non-payment far earlier than six years before plaintiffs initiated this action.  See id. at *8.  Significantly, the FAC alleges no facts, beyond conclusory allegations, to explain how plaintiffs were reasonably diligent in commencing this action.  (See FAC ¶ 5.)

Recognizing the futility of countering NBCUniversal's statute of limitations defense on the merits, plaintiffs attempt to defeat it primarily by asserting that the substantive law of either California or Nevada, rather than that of New York, applies to this dispute.  (Mem. of Law in Opp. to Def.'s Mot. to Dismiss at 7-10, ECF No. 44.)  This argument is meritless.  First, the Nutcracker Agreement, which, as discussed above, serves as the alleged source of plaintiffs' belief that NBCUniversal was responsible for paying royalties to Baiul (FAC ¶ 3), contains a choice of law clause that states that it shall be governed and construed, and the legal relations shall be determined, in accordance with New York law (FAC, Ex. A); see Ministers & Missionaries Ben. Bd. v. Snow, 26 N.Y.3d 466, 470 (2015) (stating that "courts will generally enforce choice-of-law clauses"); but see Fin. One Pub. Co. v. Lehman Bros. Special Fin., 414 F.3d 325, 334 (2d Cir. 2005) (explaining the "reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action").

Second, even if the Nutcracker Agreement's choice of law clause does not dictate the substantive law to be applied to plaintiffs' claims, the Court is

unpersuaded that the substantive laws of either Nevada or California should govern this dispute.  Plaintiffs' argument that Nevada law applies is frivolous—Nevada has no connection to this litigation other than the fact that Baiul moved there at some point after she commenced this action in New York, long after the events giving rise to this litigation took place.  Plaintiffs' argument that California law applies similarly fails because plaintiffs have waived their choice of law argument by affirmatively representing that New York law applies in numerous prior filings in this action.  See Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law." (quotation marks omitted)); Cargill, Inc. v. Charles Kowsky Res., Inc., 949 F.2d 51, 55 (2d Cir. 1991) (stating that the parties' "conduct during litigation may indicate assent to the application of another state's law"); (see, e.g., March 16, 2016 Talbert Decl., Ex. 3).  Moreover, based on New York's choice of law rules, the Court also finds that plaintiffs have failed to show that California has more significant contacts or a more significant interest than New York with respect to the matters in dispute.  See Maryland Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003); Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 319 (1994).  The Court's determination also relies, in large part, on plaintiffs' own allegations that the Nutcracker Agreement "provides for substantial performance in New York" and that Mendelson "substantially performed obligations in New York and/or has received monies from New York for the use and exploitation" of the Nutcracker recording.  (FAC ¶ 8.)

Finally, the Court observes that, even if California law governed this dispute, the Court firmly believes that plaintiffs' claims would be time-barred based on essentially the same reasoning that the Court relied on above to conclude that plaintiffs' claims are time-barred under New York law.  See Norgart v. Upjohn Co., 981 P.2d 79, 83 (Cal. 1999) (stating that a cause of action generally accrues as of the time when the cause of action is complete with all of its elements, but that the discovery rule postpones accrual of the cause of action until the plaintiff discovers, or has reason to discover, the cause of action).

> 3.    Claim-Specific Grounds for Dismissal

In addition to the two grounds (Copyright Act preemption and the statute of limitations) discussed above that justify dismissal of all of plaintiffs' claims, each of plaintiffs' claims is, in the alternative, subject to dismissal for at least one additional reason specific to that claim.  Although there may be additional bases for dismissing each of these claims (and NBCUniversal raises several), the Court here merely identifies the clearest reason why plaintiffs fail to state a plausible claim as to each of their asserted causes of action.  For the reasons explained below, the Court concludes that plaintiffs' unjust enrichment claim must be dismissed pursuant to the statute of frauds, their conversion claim must be dismissed because plaintiffs do not specifically identify the property at issue, and their accounting claim must be dismissed because plaintiffs fail to plausibly allege a confidential or fiduciary relationship or a breach of duty imposed based on such a relationship.

a)   Unjust enrichment

Under New York's statute of frauds, any agreement that by its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime, must be in writing to be enforceable.  N.Y. Gen. Obl. Law § 5-701(a)(1).[12]  "To satisfy the statute of frauds, a writing must identify the parties, describe the subject matter, state all the essential terms of an agreement, and be signed by the party to be charged."  Durso v. Baisch, 37 A.D.3d 646, 647 (2d Dep't 2007).  The writing "allegedly evidencing a contract must state the entire agreement with such certainty that the substance thereof will appear from the writing alone."  Tamir v. Greenberg, 119 A.D.2d 665, 666 (2d Dep't 1986); see Olim Realty v. Lanaj Home Furnishings, 65 A.D.3d 1318, 1320 (2d Dep't 2009).  Agreements to pay recurring royalties must comply with the statute of frauds to be enforceable.  Sirico v. F.G.G. Prods., Inc., 71 A.D.3d 429, 434 (1st Dep't 2010) ("[A]ny agreement to royalties extending beyond one year must be in writing to satisfy the statute of frauds."); Melwani v. Jain, 281 A.D.2d 276, 276-77 (1st Dep't 2001) ("The alleged oral agreement, under which defendants were to pay plaintiff a royalty during his lifetime, and then pay it to his heirs in perpetuity, was correctly held to be unenforceable under the Statute of Frauds as incapable of performance within one year or of complete performance before the end of plaintiff's lifetime.").

---

[12] Once again, plaintiffs primarily rest their opposition to NBCUniversal's claim-specific defenses by arguing that the substantive laws of either California or Nevada govern this action.  (Mem. of Law in Opp. to Def.'s Mot. to Dismiss at at 12-15.)  For the reasons previously stated, the Court concludes that all of plaintiffs' claims are governed by New York law.

In plaintiffs' several complaints in this action filed prior to the operative FAC, plaintiffs alleged that NBCUniversal was liable for breach of a written contract agreement that it had entered into with Baiul.  Having conceded that no such written agreement exists, plaintiffs have, in the FAC, refashioned their untenable contract claim as an unjust enrichment claim.  Such a contract claim, premised on an unwritten agreement, would violate the statute of frauds because the agreement would not have been capable of performance within one year— plaintiffs allege that NBCUniversal had a recurring duty to pay royalties to Baiul from 1995 (or 1994) up through the present.  See Sirico, 71 A.D.3d at 434.  Because plaintiffs may not pursue an unjust enrichment claim under circumstances in which the statute of frauds bars the underlying contract upon which the unjust enrichment claim is predicated, Thiam v. Am. Talent Agency, Inc., No. 11 Civ. 1465(GBD), 2012 WL 1034901, at *5 (S.D.N.Y. Mar. 27, 2012), plaintiffs' unjust enrichment claim also may not lie, and is therefore subject to dismissal.[13]

b)   Conversion

"To establish a claim of conversion, a plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question . . . to the exclusion of the plaintiff[']s rights."  Berman, 580 F. Supp. 2d at 206 (quotation marks omitted).  A claim for "conversion of intangible property is not

---

[13] To the extent that plaintiffs seek to rely on the doctrine of part performance to escape the statute of frauds, plaintiffs have failed to establish that this exception applies.  Neither party is alleged to have taken any actions that were unequivocally referable to the parties' purported oral agreement. See Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Grp. PLC, 93 N.Y.2d 229, 235-36 (1999).

actionable under New York law." <u>MBF Clearing Corp. v. Shine</u>, 212 A.D.2d 478, 479 (1st Dep't 1995) (citing <u>Sporn v. MCA Records, Inc.</u>, 58 N.Y.2d 482, 489 (1983)). Where the property alleged to have been converted is money, "it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." <u>Republic of Haiti v. Duvalier</u>, 211 A.D.2d 379, 384 (1st Dep't 1995); <u>see also</u> <u>Chang v. Gordon</u>, No. 96 CIV. 0152(JFK), 1997 WL 563288, at *10 (S.D.N.Y. Sept. 8, 1997). A claim for conversion of money is not available where the plaintiff never had ownership, possession or control of the money in question. <u>It's Ent'mt, Div. of I.S. Enters., Inc. v. Choice Ent'mt, Inc.</u>, No. 90 Civ. 0653 (RWS), 1991 WL 285615, at *10 (S.D.N.Y. Dec. 31, 1991).

The FAC alleges, in relevant part, that defendants "converted Oksana Performance to their benefit in the use and exploitation of the Picture with no consideration to Plaintiffs." (FAC ¶ 18.) The term "Oksana Performance" is not defined in the FAC, but appears to refer to Baiul's December 19, 1994 performance in the Nutcracker On Ice show. (<u>See</u> FAC ¶ 2.) Plaintiffs fail to state a claim for conversion because they never allege that they had ownership, possession or control of any specifically identifiable property that is or was in NBCUniversal's possession.[14] Furthermore, it is unclear precisely what property plaintiffs allege that defendants converted. Baiul's figure skating performance is not itself a tangible item of property capable of serving as the basis for a conversion claim. To the extent that plaintiffs' claim is based on the recording of Baiul's performance, the

---

[14] Additionally, as with plaintiffs' unjust enrichment claim, their conversion claim is merely a thinly disguised contract claim, and is also subject to dismissal on that ground. <u>See</u> <u>It's Ent'mt, Div. of I.S. Enters.</u>, 1991 WL 285615, at *10.

FAC does not allege that plaintiffs ever possessed a physical recording of the performance belonging to them that defendants have taken but refuse to return. <u>Cf. Sporn</u>, 58 N.Y.2d at 489 ("[A]n action involving infringement of property rights by virtue of misappropriating tangible property – in this case the master recording – should properly be considered an action to recover for conversion of that property."). Finally, to the extent that plaintiffs' claim is based on monetary royalty payments allegedly owed to Baiul, plaintiffs have not specifically identified that money with the requisite particularity, nor have they alleged that Baiul ever had ownership, possession or control of it.  (FAC ¶ 3 ("[N]o 'royalties' have ever been paid to Oksana by NBC Sports with respect to the Oksana Performance.").)

c)   Accounting

A claim for accounting under New York law requires that a party establish "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." <u>Dayan Enterprises</u>, 2003 WL 22832706, at *1.  "'The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest.'" <u>Ctr. for Rehab. & Nursing at Birchwood, LLC v. S & L Birchwood, LLC</u>, 92 A.D.3d 711, 713 (2d Dep't 2012) (quoting <u>Palazzo v. Palazzo</u>, 121 A.D.2d 261, 264 (1st Dep't 1986)).

Plaintiffs' accounting claim fails at the initial step because the FAC does not allege the existence of a confidential or fiduciary relationship between plaintiffs and

34

NBCUniversal.  The FAC, in fact, does not even allege any direct relationship between plaintiffs and NBCUniversal or that NBCUniversal assumed a fiduciary obligation owed to plaintiffs by any other party.  In the absence of such allegations, a cause of action for an accounting may not lie.

### 4.   Dismissal without Leave to Amend

As explained above, NBCUniversal is entitled to judgment on the pleadings— on numerous grounds—as to all causes of action alleged in the Fourth Amended Complaint.  Plaintiffs have not expressly asked for leave to amend the FAC in the event that the Court grants NBCUniversal's motion, but, even if they had done so, this Court would deny leave to amend in light of plaintiffs' bad faith in litigating this action and because of the numerous insurmountable barriers to plaintiffs' ability to state a cognizable cause of action for which they might obtain any relief. Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).  Plaintiffs have already had five chances to plead a plausible claim—that is far more opportunities than were warranted given the clear deficiencies in whatever claim they might hope to assert based on the events underlying this case.  Plaintiffs' claims against NBCUniversal are therefore dismissed with prejudice.

Because there is no evidence that any other defendant has been served with the Fourth Amended Complaint, and no other remaining defendant has appeared in this action or moved to dismiss any of plaintiffs' claims, all claims against the remaining defendants are dismissed without prejudice.

IV.    NBCUNIVERSAL'S REQUEST FOR SANCTIONS

The last issue that the Court must take up in resolving the parties' motions is NBCUniversal's request for sanctions against plaintiffs' counsel, Raymond J. Markovich, pursuant to 28 U.S.C. § 1927.   NBCUniversal contends that sanctions are warranted because, inter alia, Mr. Markovich maintained this action for years after it became clear that the allegations were meritless and contained numerous deficiencies that clearly precluded plaintiffs' entitlement to any of the their requested relief.   For the reasons set forth below, the Court agrees that § 1927 sanctions against Mr. Markovich are justified.   The Court therefore imposes a sanction of NBCUniversal's costs and expenses, including reasonably attorney's fees, on Mr. Markovich.

A.    Legal Standards

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   28 U.S.C. § 1927.   To impose sanctions under § 1927, "the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."   Agee v. Paramount Commc'ns Inc., 114 F.3d 395, 398 (2d Cir. 1997); see also Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012); Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009).   "[T]he imposition of sanctions under § 1927 requires a clear showing of bad faith on the part of an attorney."   Salovaara v. Eckert, 222 F.3d 19, 35 (2d Cir. 2000) (quotation marks omitted).   "Bad faith may be inferred only if

actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Id. (quotation marks and citation omitted).

B.    Discussion

Based on plaintiffs' numerous frivolous filings and misrepresentations over the course of this litigation, the Court finds that Mr. Markovich has unreasonably and vexatiously multiplied the proceedings in this case and that both of the necessary elements for imposing § 1927 sanctions have been met.  If ever this Court has witnessed attorney conduct more vexatious and harassing or deserving of § 1927 sanctions, the Court has difficulty in recalling that occasion.

First, plaintiffs' claims—which have morphed and transformed over the course of plaintiffs' five complaints as a result of Mr. Markovich's attempts to persist at prolonging the inevitable—have clearly been frivolous since the commencement of this action in December 2013.  In particular, beyond the fact that plaintiffs' three current claims are facially subject to dismissal on several grounds, all of the claims that plaintiffs have asserted over the course of this tortured litigation—ranging from those asserted in their initial complaint and up through the operative FAC—are clearly barred by any potentially applicable statute of limitations.  Notwithstanding the New York State Supreme Court's denial of NBCUniversal's early motion to dismiss (which, as discussed below, rested on Mr. Markovich's unfounded representation to that court that Baiul and NBCUniversal had entered into a written agreement that provided for perpetual royalties), it is plainly apparent that in December 2013 plaintiffs could not assert any claims based

on Baiul's 1994 Nutcracker On Ice performance.  To the extent that it would not

otherwise have been clear to Mr. Markovich that the statute of limitations posed an

insurmountable barrier to Baiul's ability to assert claims arising from her 1994

Nutcracker On Ice performance, that result became blatantly obvious when this

Court dismissed Baiul's lawsuit against William Morris and her prior action against

NBCUniversal, both suits in which Mr. Markovich also represented Baiul.  See

William Morris, 2014 WL 1804526; NBCUniversal Media, 2014 WL 1651943.

Second, there is ample evidence in the record to infer Mr. Markovich's bad

faith based on his advancement of litigation positions that are so lacking in merit

that the only reasonable conclusion to be drawn is that his actions were taken for

the improper purposes of either delay or to inflict as much cost (in terms of time and

expense) on NBCUniversal as possible.[15]  The Court here outlines only several of

the many examples of Mr. Markovich's conduct from which his bad faith may be

inferred.  Early in this litigation, Mr. Markovich avoided dismissal of this action in

the New York State Supreme Court (based on readily apparent statute of

limitations and statute of frauds issues) by asserting—without any non-speculative

basis—that plaintiffs' claims were based on a written agreement, extending in

perpetuity, between Baiul and NBCUniversal.  Having just barely defeated

---

[15] In William Morris, this Court previously considered whether to impose § 1927 sanctions against Mr. Markovich, but ultimately declined to grant such relief.  The Court declined to impose sanctions because it was not clear whether it was Mr. Markovich or Baiul herself who was responsible for the unreasonable and vexatious conduct that the Court believed permeated that action.  William Morris, 2014 WL 1804526, at *13.  Based on Mr. Markovich's conduct in this action and his numerous changes of position and continued pursuit of claims that even he apparently recognized were meritless, the Court cannot help but conclude that it is Mr. Markovich who is largely responsible for subjecting NBCUniversal (and this Court) to vexatious and harassing litigation.  The Court is, at this juncture, left with little doubt that Mr. Markovich has played at least a substantial role in unnecessarily multiplying Baiul's frivolous series of lawsuits.

NBCUniversal's early motion with that argument (Justice Ramos stated that he anticipated the litigation would not last long (Feb. 16, 2016 Markovich Affirmation, Ex. A at 15-16)), Mr. Markovich continued to rely on a theory that a written agreement existed up until excising this claim from the FAC in December 2015, despite conceding that plaintiffs became aware, in May 2014, that no such written agreement ever existed based on NBCUniversal's judicial admissions.  (E.g., FAC ¶ 5.)  Although admitting that he was aware as of May 2014 that no written contract existed, Mr. Markovich nonetheless subsequently filed the third amended complaint, which continued to allege a claim for breach of a written contract, in June 2015.  (ECF No. 5-13.)  Even more egregiously, Mr. Markovich continued to pursue this theory despite knowing that Baiul had initiated an action in California that charged NBCUniversal with liability for having not entered into a written contract with Baiul.  (See ECF No. 21-1.)  Refusing to end his vexatious conduct there, Mr. Markovich proceeded to file the FAC in December 2015, which alleged essentially the same claims that Baiul was pursuing in the California action.  Mr. Markovich elected to do so despite NBCUniversal's (more than reasonable) offer to allow Baiul to pursue her claims to finality in a single forum.  Finally, NBCUniversal has also presented the Court with further evidence of Mr. Markovich's bad faith in the form of email communications between counsel in which Mr. Markovich threatened what would certainly be a baseless Rule 11 motion in response to NBCUniversal's Rule 12(c) motion.  (See March 4, 2016 Talbert Decl., Ex. 9, ECF No. 35-9.)[16]  Based on all of this conduct, as well Mr. Markovich's

---

[16] Mr. Markovich also suggests that Rule 11 sanctions should be imposed on NBCUniversal in his

numerous other frivolous submissions to this Court that have been rife with conjecture, ad hominem attacks and a blatant disregard for well-settled legal principles, see Neroni v. Becker, 609 F. App'x 690, 693 (2d Cir. 2015) (summary order), the Court finds, by clear and convincing evidence, that Mr. Markovich's conduct in this litigation has been in bad faith and made for improper purposes.

In opposing NBCUniversal's request, Mr. Markovich argues that § 1927 sanctions should not be imposed primarily because plaintiffs have made several attempts to voluntarily dismiss this action without prejudice, and because NBCUniversal has failed to assert any excess costs, expenses or attorneys' fees reasonably incurred as a result of his misconduct, or that he has engaged in any bad faith conduct warranting sanctions.  (Mem. of Law in Opp. to Def.'s Mot. to Dismiss at 16-19.)  The Court rejects these arguments.  First, Mr. Markovich's repeated attempts to withdraw this action without prejudice—including by filing improper notices of voluntary dismissal pursuant to Rule 41(a)(1)(A)(i)—do not counterbalance Mr. Markovich's numerous frivolous filings and arguments described above.  Moreover, as explained above, Mr. Markovich's refusal to dismiss this action with prejudice and allow Baiul to proceed solely in her California action (with NBCUniversal's promise not to seek dismissal of that action on res judicata grounds) unduly multiplied these proceedings and caused unnecessary further expense.  As to Mr. Markovich's conclusory assertion that he has not engaged in any

---

opposition brief to NBCUniversal's Rule 12(c) motion.  (Mem. of Law in Opp. to Def.'s Mot. to Dismiss at 15.)  Mr. Markovich's request is unfounded, and the Court rejects it on that basis.

bad faith conduct, that is belied by the actions from which his bad faith may be inferred that the Court laid out above.

As noted above, Mr. Markovich moved for leave to withdraw as plaintiffs' counsel on March 24, 2016. (ECF No. 48.)[17]  In support of his motion, Mr. Markovich states that, following the Court's March 7, 2016 Order informing him that § 1927 sanctions may be avoided if plaintiffs voluntarily dismissed this action with prejudice not later than March 11, 2016 (ECF No. 37), he attempted to persuade Baiul to dismiss the action with prejudice but was unable to obtain her consent. (Mar. 24, 2016 Markovich Affirmation ¶¶ 4-5, ECF No. 50.)  Mr. Markovich states that he attempted to comply with the Court's March 7 Order to the extent that he could personally do so by seeking an adjournment of filing deadlines so that he could seek withdrawal and plaintiffs could obtain new counsel, but that the Court rejected his effort to do so. (Id. ¶¶ 6-7.)  Mr. Markovich further states that he had no authority to dismiss the action without prejudice without his client's consent. (Id. ¶ 11.)  Even accepting Mr. Markovich's representations regarding his attempt to heed the Court's March 7 Order, the Court is not persuaded that Mr. Markovich's efforts to excise himself from the case at such a late stage—and only after sanctions were a serious threat—justifies the denial of NBCUniversal's sanctions request.  Mr. Markovich's eleventh hour realization that his vexatious conduct throughout this litigation could have personal consequences does not excuse or counterbalance his preceding bad faith conduct described above.

---

[17] To date, NBCUniversal has not opposed Mr. Markovich's motion to withdraw.

For the foregoing reasons, the Court concludes that sanctions against Mr. Markovich are warranted. NBCUniversal is directed to file a detailed submission concerning the precise amount of its costs and attorneys' fees in this action not later than two weeks from the date of this decision. Plaintiffs (or, as appropriate, Mr. Markovich) shall file any opposition <u>with respect to the reasonableness of NBCUniversal's requested fees only</u>, not later than one week following the date of NBCUniversal's submission.

V.     CONCLUSION[18]

For the reasons set forth above, plaintiffs' motion to dismiss this action without prejudice is DENIED, and NBCUniversal's motion to dismiss this action with prejudice pursuant to Rule 12(c) is GRANTED. The Court also GRANTS NBCUniversal's request for § 1927 sanctions, and concludes that Baiul's counsel must pay NBCUniversal's costs and attorneys' fees. NBCUniversal shall file a detailed submission concerning the precise amount of its costs and attorneys' fees in this action not later than two weeks from the date of this decision. Plaintiffs shall file any opposition <u>with respect to the reasonableness of NBCUniversal's requested fees only</u>, not later than one week following the date of NBCUniversal's submission.

---

[18] The Court has considered plaintiffs' other arguments, and concludes that they are without merit.

The Clerk of Court is directed to close the motions at ECF Nos. 28 and 31.

SO ORDERED.

Dated:      New York, New York
            April 19, 2016

            _____
            KATHERINE B. FORREST
            United States District Judge